PEOPLE v NIX

Docket No. 311102. Submitted May 16, 2013, at Petoskey. Decided May 23, 2013, at 9:10 a.m. Leave to appeal sought.

Paul W. Nix was convicted by a jury in the Grand Traverse Circuit Court, Thomas G. Power, J., of two counts of second-degree child abuse and one count of third-degree fleeing and eluding a police officer. The charges stemmed from a high-speed vehicle chase and subsequent crash of defendant's vehicle that took place after a sheriff's deputy approached defendant's vehicle to investigate the vehicle's expired license plate tag and defendant drove the vehicle away because he feared that there was an outstanding warrant for his arrest. The child-abuse counts were based on the fact that defendant's infant son and four-year-old stepson were in his vehicle at the time of the chase and were not restrained by seatbelts or legally mandated child safety seats. Defendant appealed.

The Court of Appeals *held*:

1. The subsection of the statute prohibiting second-degree child abuse that provides that a person is guilty of second-degree child abuse if the person knowingly or intentionally commits an act "likely" to cause serious physical or mental harm to a child regardless of whether harm results, MCL 750.136b(3)(b), requires evidence that the person's act could probably result in serious harm to the child, regardless of whether the harm actually occurs. The prosecution presented sufficient evidence in this case from which the jury could determine beyond a reasonable doubt that defendant's acts could probably have resulted in serious harm to his children.

2. The trial court, in scoring offense variable (OV) 13, MCL 777.43 (continuing pattern of criminal behavior), properly considered defendant's commission of an act of felonious assault three days before the sentencing offenses even though defendant had pleaded guilty of a different offense and the felonious assault charge had been dismissed. In scoring OV 13, all crimes within a five-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction. A sentencing court is free to consider charges that were earlier

dismissed if there is a preponderance of the evidence supporting that the offense took place. It follows that a court may consider the charges against a defendant that were dismissed as a result of a plea agreement in scoring OV 13. The trial court acted within its discretion by determining that defendant had committed an act of felonious assault three days before the sentencing offenses and by using that assault in scoring OV 13.

3. There is no support in the record for defendant's assertion that he did not waive his right to a circuit court arraignment. In any event, a showing of prejudice is required to merit relief for a failure to hold a circuit court arraignment. Defendant has not established prejudice.

Affirmed.

1. CHILD ABUSE — SECOND-DEGREE CHILD ABUSE — LIKELY TO CAUSE HARM — PROBABLY RESULT IN HARM.

A person is guilty of second-degree child abuse if the person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results; the evidence required for a conviction must show that the defendant's act could probably result in serious harm to a child, regardless of whether the harm actually occurs (MCL 750.136b[3][b]).

2. SENTENCES — OFFENSE VARIABLE 13 — PLEA AGREEMENTS — DISMISSED CHARGES.

All crimes within a five-year period, including the sentencing offense, shall be counted in scoring offense variable 13 (continuing pattern of criminal behavior) regardless of whether the offense resulted in a conviction; a court may consider for such purposes charges against the defendant that were dismissed as a result of a plea agreement; the court may consider charges that were earlier dismissed if there is a preponderance of the evidence supporting that the offense took place (MCL 777.43[2][a]).

3. CRIMINAL LAW — ARRAIGNMENTS — CIRCUIT COURTS — FAILURE TO HOLD ARRAIGNMENTS.

A showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment (MCR 6.113[A]).

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Robert A. Cooney,* Prosecuting Attorney, and *Meagan E. Hanna,* Assistant Prosecuting Attorney, for the people.

*Michael A. Faraone, P.C.* (by *Michael A. Faraone*), for defendant.

Paul W. Nix *in propria persona.*

Before: RONAYNE KRAUSE, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM. A jury convicted defendant, Paul William Nix, of two counts of second-degree child abuse in violation of MCL 750.136b(3)(b), and one count of third-degree fleeing and eluding a police officer in violation of MCL 257.602a(3)(a). Defendant's convictions stem from a high-speed chase with several deputies instigated by defendant's flight. Defendant's infant son and four-year-old stepson were in the vehicle at the time and were not restrained by either seatbelts or legally mandated child safety seats. See MCL 257.710d.

Defendant contends that the prosecution presented insufficient evidence that the high-speed chase was "likely to cause serious physical or mental harm to a child." The prosecution successfully established that such harm could probably occur based on evidence regarding the nature of this incident. Defendant also argues that the trial court erroneously assigned 25 points for offense variable (OV) 13, MCL 777.43 (continuing pattern of criminal behavior), based on a felonious assault charge that was dismissed in an earlier criminal matter. MCL 777.43(2)(a), however, specifically permits a court to consider "all crimes within a 5-year period . . . regardless of whether the offense resulted in a conviction." Finally, defendant challenges his trial counsel's failure to address the fact that the circuit court did not conduct an arraignment on the information. The

record demonstrates that defendant waived his arraignment. Moreover, defendant had full notice of the charges against him and cannot establish the requisite prejudice to warrant relief. We affirm defendant's convictions and sentences.

## I. BACKGROUND

In the early morning hours of June 1, 2011, defendant, his wife, and their two children were sitting in a Chevy Blazer in a city park. A patrolling Grand Traverse County sheriff's deputy attempted to approach the vehicle because its license plate bore expired tags. Defendant drove away because he feared that there was an outstanding warrant for his arrest based on an armed altercation he had engaged in three days before.

Defendant raced through a maze of streets, taking many twists and turns, with several patrol cars joining the pursuit. During the 24-mile chase, defendant reached speeds of up to 100 miles an hour, crossed the centerline, and disregarded traffic signals and signs. Defendant veered to avoid "stop sticks" a deputy had placed in his path and drove off the roadway and into a private yard. Defendant attempted to "ram" a patrol car that attempted to "box in" the Blazer and nearly caused "a devastating accident." Defendant led the deputies through two downtown areas and past civilian vehicles unlucky enough to be on the road.

Ultimately, defendant drove into Benzie County and to the Crystal Mountain Resort. Defendant drove his vehicle up a hill and crashed into the resort's large "Alpine Slide." Defendant escaped on foot and was not captured that night. Defendant's wife and children also fled on foot but were discovered shortly thereafter. The deputies searched the vehicle and found no child safety

seats for the two small children. One week later, an Arkansas state trooper arrested defendant while he attempted to escape to Mexico with his wife and their children.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence that his actions were likely to cause serious harm to his child passengers in support of the second-degree child abuse charges. When examining a challenge to the sufficiency of the evidence, we must review the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecutor proved the elements of the charged offense beyond a reasonable doubt. *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005).

Statutory interpretation questions are also generally reviewed de novo. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009). The goal of statutory interpretation is to discern the Legislature's intent based on the statutory language. "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997).

Defendant was convicted of second-degree child abuse under MCL 750.136b(3), which provides, in relevant part:

> (3) A person is guilty of child abuse in the second degree if any of the following apply:

* * *

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.[1]

### A. INTERPRETATION OF THE SECOND-DEGREE CHILD ABUSE STATUTE

Defendant contends that his act of engaging in a high-speed chase with the police with his young children unrestrained in his vehicle was not "likely" to cause harm to the children as required to establish a violation of MCL 750.136b(3)(b).

There is no binding precedent defining the term "likely" in this statute. In *Moll v Abbott Laboratories*, 444 Mich 1, 22; 506 NW2d 816 (1993), the Supreme Court defined the word "likely" (as used in the phrase "likely cause" of an injury) by quoting Black's Law Dictionary (6th ed), p 925 (citations omitted): " 'Probable. . . . Likely is a word of general usage and common understanding, broadly defined as of such nature or so circumstantial as to make something probable and having better chance of existing or occurring than not.' " *Moll*, 444 Mich at 22, compared the term "likely" to the term "possible" which "connotes a lesser standard of information needed to provide knowledge of causation." Again quoting Black's Law Dictionary, p 1166, the *Moll* Court defined the lower "possibility" standard as: " 'Capable of existing, happening, being, becoming or coming to pass; feasible, not contrary to nature of things; neither necessitated nor precluded; free to happen or not; contrasted with impossible.' "

---

[1] Amendments of the statute that took effect on July 1, 2012, altered the punishments for first-and second-degree child abuse and had no effect on the provisions at issue in this case. 2012 PA 194.

*Moll*'s interpretation is consistent with the definition of "likely" in various lay dictionaries. See MCL 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language . . . ."). *Webster's New Universal Unabridged Dictionary* (Deluxe 2d ed), p 1048, defines "likely" as "probably" and "seeming as if it would happen or make happen; reasonably to be expected; apparently destined." *Random House Webster's Unabridged Dictionary* (2d ed), p 1114, similarly defines "likely" as "probably or apparently destined." *Random House Webster's* also includes an instructive usage note stating that one need not qualify the term "likely" with words such as "very" or "quite." *Id.* The *American Heritage Dictionary of the English Language* (1969), p 757, defines "likely" as "[h]aving, expressing, or exhibiting an inclination or probability; apt" and "[p]robably."

Treating the terms "likely" and "probably" as synonymous is also consistent with precedent defining the term "likely" in relation to second-degree murder. In *People v Goecke*, 457 Mich 442, 448-450; 579 NW2d 868 (1998), defendant Goecke was charged with second-degree murder for driving in an extremely dangerous manner while intoxicated and causing the death of the driver of a car with which his vehicle collided. To establish the malice necessary to prove the murder charge, the prosecutor had to show either "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful *disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.*" *Id.* at 464 (emphasis added). The Supreme Court described the " 'likelihood' " of harm necessary to infer malice as " 'a plain and strong likelihood' " and " 'a high probability . . . .' " *Id.* at 466-467 (citations omitted).

Based on *Moll*, *Goecke*, and the dictionary definitions of the term "likely," we hold that MCL 750.136b(3)(b) requires evidence that a defendant's act could *probably* result in serious harm to the child, regardless of whether the harm actually occurs.

## B. APPLICATION

The prosecution presented sufficient evidence from which the jury could determine beyond a reasonable doubt that defendant's acts could probably have resulted in serious harm to his young children. Defendant fled from law enforcement personnel with two small children unrestrained in his car. Defendant led the police on a 24-mile chase, reaching speeds of 100 miles an hour. Defendant went off the road, took curves at dangerous speeds, crossed the centerline, and ignored all stop and yield signs along the route. According to the pursuing deputies, defendant's actions likely could have resulted in a collision. The pursuit ended when defendant crashed his vehicle into a large slide erected at the Crystal Mountain Resort.

The prosecutor also presented testimony from sheriff deputies that defendant's speed and manner of driving were dangerous and likely carried a high risk of potential harm. One deputy testified that if defendant had "push[ed]" his speeds any higher on the curves, he "[m]ost likely" would have "crash[ed]" the vehicle. Another testified that defendant nearly caused "a devastating accident" while trying to avoid being "boxed in" by the patrol vehicles. Even defendant's wife admitted that defendant's actions were "maybe likely to injure" the children. This evidence sufficed for the jury to infer the probability of danger to the child victims. We may not interfere with the

jury's assessment of the evidence. *People v Ortiz*, 249 Mich App 297, 302; 642 NW2d 417 (2002).[2]

Defendant presents statistical data regarding the likelihood of harm and injury arising from police chases. Defendant did not present this information in the lower court, however, and may not now expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

Defendant also asserts that his convictions should not stand in light of the tiered format of MCL 750.136b. Defendant complains that third-degree child abuse carries a lesser penalty than second-degree but requires the prosecutor to prove that an actual injury occurred, while no actual injury is required to be proved for a second-degree conviction. The Legislature wrote the statute in this manner and we may not disregard its plain language. See *Greene v A P Prod, Ltd*, 475 Mich 502, 515; 717 NW2d 855 (2006) ("The rule must and should be that a court applies the statute as written.").

### III. SCORING OF OV 13

Defendant challenges the assignment of 25 points for OV 13. MCL 777.43 governs the scoring of OV 13, in relevant part, as follows:

> (1) [OV] 13 is continuing pattern of criminal behavior. Score [OV] 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

> \* \* \*

---

[2] For examples of other acts of dangerous driving deemed to carry a likelihood of harm to others see *Goecke*, 457 Mich 442.

(c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person ..................................................................... 25 points

* * *

(2) All of the following apply to scoring [OV] 13:

(a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.

We review the interpretation and application of the legislative sentencing guidelines de novo. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). When scoring the guideline variables, "[a] sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). We review the scoring to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score. *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). We must uphold a score if there is any supporting evidence. *Hornsby*, 251 Mich App at 468.

Defendant committed two crimes against a person—second-degree child abuse. MCL 777.16g(1). The Department of Corrections recommended assessing 25 points for OV 13 because defendant committed an act of felonious assault in violation of MCL 750.82 three days before the current offenses. Felonious assault is also a crime against a person. MCL 777.16d. Defendant was arrested and charged with felonious assault but pleaded guilty of possession of a firearm by a felon, MCL 750.224f (a public safety offense), after the victim refused to testify. Defendant objected to the use of this

prior act in scoring OV 13 because his ultimate conviction was for a crime that is not a crime against a person.

The trial court properly considered defendant's commission of an act of felonious assault even though defendant pleaded guilty of a different offense. In scoring OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a); *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006). A sentencing court is free to consider charges that were earlier dismissed, *People v Earl*, 297 Mich App 104, 110-111; 822 NW2d 271 (2012), if there is a preponderance of the evidence supporting that the offense took place. *People v Drohan*, 475 Mich 140, 142-143; 715 NW2d 778 (2006). It follows that a court may consider the charges against a defendant dismissed as a result of a plea agreement in scoring OV 13.

To perpetrate a felonious assault, a defendant must commit "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). A defendant commits an assault when he or she takes some "unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). At trial for the current offenses, defendant admitted that he had fled from the deputy because three days earlier he had aimed a rifle at his cousin following an argument. The trial court also relied on the victim's statement in the presentence investigation report (PSIR) related to the earlier felonious assault charge that defendant had aimed a rifle at him.[3] The

---

[3] A court may rely on the contents of a PSIR in calculating the guidelines. *People v Ratkov*, 201 Mich App 123, 125; 505 NW2d 886 (1993). This

court therefore acted within its discretion by determining that defendant had committed an act of felonious assault three days before the sentencing offenses and using that assault to score OV 13.

Moreover, it was not "fundamentally unfair" to consider the dismissed felonious assault charge. Defendant takes this language from *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009), out of context. In *McGraw*, the court assessed 10 points for OV 9 because there were two individuals placed in danger during the defendant's act of fleeing and eluding the police after the underlying breaking and entering was committed. The prosecutor had agreed to the dismissal of the fleeing and eluding charge, however, in brokering the defendant's plea agreement for the breaking and entering charge. *McGraw*, 484 Mich at 122-123. The Supreme Court's conclusion that it would be fundamentally unfair to count the fleeing and eluding offense against the defendant in scoring the sentencing offense was based on the Court's conclusion that OV 9 is an "offense-specific" variable and "only conduct relating to the offense may be taken into consideration when scoring" it. *Id.* at 124, 126 (quotation marks and citation omitted). *McGraw* specifically provides that if a particular OV allows the court to look beyond the sentencing offense, it may do so. *Id.* at 126, citing *People v Sargent*, 481 Mich 346; 750 NW2d 161 (2008). By its plain language OV 13 allows the court to look beyond the sentencing offense.

### IV. ASSISTANCE OF COUNSEL/ARRAIGNMENT

In a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defen-

---

information could be considered despite that it was otherwise hearsay because "[t]he rules [of evidence] other than those with respect to privileges do not apply in . . . [p]roceedings for . . . sentencing . . . ." MRE 1101(b)(3).

dant contends that his trial counsel deficiently failed to take action when the circuit court failed to arraign defendant on the information. Defendant failed to preserve this issue by requesting a new trial or an evidentiary hearing and our review is therefore limited to plain error on the existing record. *People v Rodriguez,* 251 Mich App 10, 38; 650 NW2d 96 (2002). To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice. *People v Armstrong,* 490 Mich 281, 289-290; 806 NW2d 676 (2011). To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*

Following defendant's arrest, he was arraigned by use of two-way interactive video technology in the district court as required by MCR 6.104 and MCR 6.006(A). A preliminary examination was then conducted in the district court and defendant was bound over as a fourth-offense habitual offender on two counts of second-degree child abuse and one count of fleeing and eluding. After the preliminary examination, the circuit court was required to conduct an arraignment on the information at which the court would notify defendant of the charges against him and allow him to enter a plea. MCR 6.113(B). This circuit court arraignment could also be held in the district court if the county has instituted such procedures. MCR 6.111(A).

It is clear from the record that defendant was never arraigned in the circuit court, nor was the circuit court's arraignment conducted in the district court pursuant to MCR 6.111(A). However, defendant has submitted to this Court a document signed by his

attorney in which defendant waived his right to a circuit court arraignment, stated that he had been notified of the charges listed in the information, and indicated that he pleaded not guilty. Although defendant complains that he did not agree to this waiver, there is no record support for this assertion.

In any event, defendant has not established prejudice. A showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment. MCR 6.113(A). "The purpose of an arraignment is to provide formal notice of the charge against the accused." *People v Waclawski*, 286 Mich App 634, 704; 780 NW2d 321 (2009). Defendant had notice of the charges against him because he had access to the information and he was present at the preliminary examination at which he was bound over for trial on the charges. Although defendant claims ignorance of the fourth-offense habitual offender enhancement, a sentencing enhancement notice was included in the information. See *id.* at 706 ("The information duly notifies a defendant of the charges instituted against the defendant . . . .").

Another purpose of the arraignment is to allow the defendant to enter a plea on the charges. *People v Manning*, 243 Mich App 615, 624; 624 NW2d 746 (2000); MCR 6.113(B). "After trial on the merits want of plea does not render a conviction invalid." *People v Weeks*, 165 Mich 362, 364; 130 NW 697 (1911).

Affirmed.

RONAYNE KRAUSE, P.J., and GLEICHER and BOONSTRA, JJ., concurred.