# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHAN LLOYD HEMINGWAY,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2015

No. 320783
Tuscola Circuit Court
LC No. 11-012121-FH

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of possession of burglary tools, MCL 750.116, conspiracy to possess burglar tools, MCL 750.157a and MCL 750.116, malicious destruction of property greater than $1,000 but less than $20,000, MCL 750.377a(1)(b)(*i*), conspiracy to commit malicious destruction of property greater than $1,000 but less than $20,000, MCL 750.157a and MCL 750.377a (1)(b)(*i*), attempted larceny of property worth at least $1,000 but less than $20,000, MCL 750.356(3)(a), and conspiracy to commit larceny of property worth at least $1,000 but less than $20,000, MCL 750.157a and MCL 750.356(3)(a). Defendant was resentenced as a fourth habitual offender, MCL 769.12, to serve 48 months' to 30 years' incarceration for the possession of burglary tools conviction, for the conspiracy to possess burglary tools conviction, for the malicious destruction of property conviction, and for the conspiracy to commit malicious destruction of property conviction. He was also sentenced to 48 months' to 15 years' incarceration for the attempt to commit larceny of property worth at least $1,000 but less than $20,000 conviction and for the associated conspiracy conviction.

Following an appeal as of right, this Court affirmed his convictions and sentences. *People v Hemingway*, unpublished opinion per curiam of the Court of Appeals, issued March 12, 2013 (Docket No 308775). Subsequently, in an order denying leave, the Michigan Supreme Court remanded to the trial court with orders to conduct a *Ginther*[1] hearing on defendant's "new claim of ineffective assistance of counsel, which is premised on his first trial counsel's alleged conflict of interest." *People v Hemingway*, 495 Mich 860; 836 NW2d 691 (2013). The Court stated:

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

[A] presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant. MRPC 1.9(b), 1.10(b). Such a presumption may be overcome, however, if the prosecutor shows that the attorney who had a conflict of interest was properly "screened from any participation in the matter . . . ." MRPC 1.10(b)(1). The circuit court on remand shall determine when the defendant's former counsel's employment with the Tuscola County Prosecutor's office began and whether the prosecution rebutted the presumption of prejudice by showing that the former defense counsel was properly screened from any participation in the matter. [*Id.*]

On remand, the trial court conducted a *Ginther* hearing, and concluded that the prosecution had rebutted the presumption of prejudice by showing that defendant's former trial counsel, Michael Hodges, was properly screened from participation in defendant's case. Defendant now appeals that holding as of right. We affirm.

The sole issue on appeal is whether defendant was denied effective assistance of counsel when Hodges accepted a position with the prosecutor's office that was pursuing the case against defendant. Defendant argues that the prosecution failed to overcome the presumption of prejudice because the facts established at the *Ginther* hearing showed that Hodges was not properly screened from participation. We disagree.

The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859, amended 481 Mich 1201 (2008). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. Regard should be given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C); *Dendel*, 481 Mich at 130. A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *Dendel*, 481 Mich at 130.

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich at 289-290. "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

When claiming ineffective assistance due to defense counsel's conflict of interest, a defendant must show that "an actual conflict of interest adversely affected his lawyer's performance." *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998) (citation omitted).

A presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant. MRPC 1.9(b), 1.10(b). Such a presumption may be overcome, however, if the prosecutor shows that the attorney who has a conflict of interest was properly screened out from "any participation in the matter." MRPC 1.10(b)(1). [*People v Davenport*, 483 Mich 906, 906; 762 NW2d 163 (2009).]

In *People v Davenport (After Remand)*, 286 Mich App 191, 195-197; 779 NW2d 257 (2009), this Court affirmed the trial court's finding that the prosecutor's office properly screened the matter when: both the attorneys and staff were notified about the conflict before trial; the attorneys and staff understood that the conflicted attorney was to have no contact with the defendant's file and that he would not participate in any discussion, interviews, or meetings about the case; and the conflicted attorney did not actually have any contact with the case file and did not participate in discussions about the case. This Court concluded that defendant was not entitled to relief on the ground that his defense counsel joined the prosecutor's office

> because [defendant] failed to show that he was prejudiced by defense counsel's error [in failing to raise the conflict issue at trial] and, after the trial court explored the matter on remand, the record does not indicate that he was prejudiced by [defense counsel's] move to the prosecutor's office. Again, the prosecution met its burden to show that the prosecutor's office took adequate steps to prevent improper communications and consistently followed through with those steps, and no evidence showed that there were any improper communications about the case. [*Id*. at 196-197.]

Here, a review of the facts shows that the trial court did not err in finding that the prosecution overcame the presumption of prejudice. *Dendel*, 481 Mich at 124. Hodges began representing defendant in 2011. At the time, Hodges worked for a law firm commonly known as Kohl Harris. While Hodges's representation of defendant was ongoing, he entered into employment negotiations with the Tuscola County Prosecutor's office and eventually accepted a position sometime in late December 2011 or early January 2012. After accepting the position, Hodges continued to represent defendant. The testimony showed that on January 3, 2012, he met with defendant at the jail along with attorney Denis McCarthy, another attorney at Kohl Harris. McCarthy testified that he attended the January 3, 2012 meeting with defendant because he was going to represent defendant at trial instead of Hodges. Defendant, Hodges, and McCarthy discussed defendant's case during the meeting, including issues pertaining to trial strategy. However, defendant was not informed that Hodges had accepted a position at the prosecutor's office. After the January 3, 2012 meeting, Hodges had no further communications with defendant, but did continue to assist McCarthy in an advisory capacity. Defendant's trial began on January 10, 2012, and a verdict was delivered on January 12, 2012. McCarthy represented defendant at trial. Hodges did not begin working for the prosecutor until January 17, 2012.

At the *Ginther* hearing, Tuscola County Prosecuting Attorney Mark Reene explained although the Tuscola County prosecutor's office did not have a written policy to address the potential conflict of interest that arose, there was a "blanket policy" that, no matter how minor the previous involvement, Hodges would have "no involvement whatsoever" in any cases that he had represented a criminal defendant. This policy was communicated to the staff at the

prosecutor's office before Hodges's employment started. Reene also testified that he directed Hodges not to discuss any of his former cases with the staff and Hodges testified that he never disclosed any confidential information to the prosecution. Eric Wanink, the assistant prosecuting attorney assigned to defendant's case, noted that Hodges was delegated to district court matters for several months after his employment began because, as a defense attorney for Kohl Harris, Hodges had handled felony matters, and the prosecutor's office had wanted to ensure that Hodges had no contact with the felony files that he had previously worked on.

Based on these facts, we conclude that the trial court did not clearly err in its finding that the prosecution overcame the presumption of prejudice. Defendant claims that Hodges was never told not to discuss his former cases with anyone or to withdraw from his former cases. Contrary to defendant's claim, Reene testified that Hodges was instructed not to discuss his prior cases with staff at the prosecutor's office. Further, while Hodges may not have technically withdrawn from all his former cases, it was clear that he was not permitted to work on any of his former cases.[2] Defendant also asserts that the prosecution's position fails because after accepting the position at the prosecuting attorney's office, Hodges was still secondarily involved in defendant's defense. While the testimony did reveal that Hodges remained involved in defendant's case, it was clear that he had no communications with the prosecutor's office regarding the case. Wanink, the assistant prosecutor trying defendant's case, testified that Hodges did not provide him with any confidential information about defendant's case. Further, Hodges did not begin working for the prosecutor's office until after defendant's trial. There is nothing to show that, after accepting the position but still working for Kohl Harris, Hodges was unable to assist in defendant's case. Further, Hodges testified that he was not involved in any post-conviction matters on either side of the case. While, Hodges did state that he may have answered a question about sentencing posed to him by defense counsel, he did not discuss sentencing or the case generally with the prosecution. Wanink similarly testified that Hodges did not participate in defendant's sentencing and that he did not discuss the sentencing with Hodges.

Overall, defendant seems to assert that Hodges's actions created a "strong indication" of impropriety. However, the evidence does not support defendant's claims of "divided loyalty" or improper screening. Rather, the evidence showed that, upon starting his employment with the prosecutor's office, defendant was properly screened from participation in his former cases, and no confidential information was exchanged regarding defendant's case between Hodges and the prosecution. Accordingly, the trial court did not err in finding that the prosecutor overcame the presumption of prejudice.

---

[2] Defendant also relies on the fact that Wanink testified that several pleadings and documents continued to list Hodges as the defense attorney even after Hodges began his position at the prosecutor's office. However, Wanink further testified the documents did not go to Hodges; instead, they were mailed to Kohl Harris. We do not agree that this technical claim of error establishes improper screening, especially in light of Wanink's testimony that the documents were not delivered to Hodges.

Affirmed.

/s/ Michael J. Riordan
/s/Kathleen Jansen
/s/ Karen M. Fort Hood